IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert Murin, Administrator of the Estate of Andrew Murin<br>1830 East Grove Circle<br>Mesa, AZ 85204<br>　　Plaintiff, | CIVIL ACTION<br><br>TRIAL BY JURY DEMANDED |
| v. | |
| Washington County, Pennsylvania<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| PrimeCare Medical Inc.<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| Jeffrey Fewell, Warden<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| Victoria Hallett<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| Sue Woznichak<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| John Doe Corrections Officer<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| John Doe Medical Provider<br>100 W Cherry Avenue<br>Washington, PA 15301 | |
| 　　Defendants. | |

**COMPLAINT**

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PA 19102
215.546.0340

1

Plaintiff, Robert Murin, Administrator of the Estate of Andrew Murin by and through his attorney Brian Zeiger, Esq., hereby alleges the following:

## JURISDICTION & VENUE

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2. Defendant Washington County is a resident of the Western District of Pennsylvania, accordingly venue is proper pursuant to 28 U.S.C. § 1391(c)(2) and (d).

## PARTIES

3. Plaintiff Robert Murin is the Administrator of the Estate of Andrew Murin:

    a. Letters of Administration were granted to Robert Murin on January 27, 2025, by James Roman, the Register of Wills for Washington County in the Commonwealth of Pennsylvania, to be the Administrator of the Estate of Andrew Murin.

    b. Robert Murin is the sole beneficiary of the Estate of Robert Murin.

    c. Robert Murin's address is 1830 East Grove Circle, Mesa, AZ 85204.

4. Defendant Washington County is a municipality that conducts business at 100 W Cherry Avenue, Washington, PA 15301, and owns, operates, controls, and promulgates policies governing the Washington County Prison.

5. Prime Care Medical Inc. is a private subcontractor of Defendant Washington County, who was contracted to provide medical care to inmates at the Washington County Prison, located at 100 W Cherry Avenue, Washington, PA 15301.

6. Defendant Jeffrey Fewell was the warden of Washington County Prison and was the decision makers for policy at the Washington County Prison at all times relevant to the instant

action, including but not limited to medical care to inmates, medical subcontracting and medical budgets related to the subcontracting to PrimeCare, Inc., conducting business at 100 W Cherry Avenue, Washington, PA 15301, and his is being sued in both his individual and official capacities.

7. Defendants Victoria Hallett, Sue Woznichak, John Doe Corrections Officer and John Doe Medical Providers, were employed by PrimeCare Inc., and/or Washington County as health care providers or corrections officers, conducting business at 100 W Cherry Avenue, Washington, PA 15301. All of the Defendants' actions or inactions were taken under color of state law. The Defendants are sued in their individual capacity.

## FACTUAL BACKGROUND

8. Plaintiff re-alleges each and every averment as set forth previously, as if the same were set forth here in full.

9. On September 13, 2023, the Plaintiff's decedent was at his home and was off his mental health medication because his assigned social worker did not properly check his medication.

10. Bentleyville Police were called to the scene to forcibly remove the decent from his home so he could be 302'd.

11. However, a struggle ensued, and the decedent was tased by the Bentleyville Police.

12. The decedent was removed from his home.

13. On September 23, 2022, Plaintiff was transported to the Washington County prison because, unremarkably, the Bentleyville police accused him of committing a crime when they tased him.

14. Nonetheless, on or about February 1, 2023, Plaintiff's Decedent, Andrew Murin was an inmate at the Washington County Prison.

15. The decedent had not been given proper medical care due to the tasing by the Bentleyville Police.

16. Further, the decedent had a bleeding ulcer, for which he was not given proper treatment.

17. The decedent was given little to no medical care at the Washington County Prison.

18. The Washington County Prison was aware of the decedent's extreme mental health issues.

19. The decedent also had pneumonia and was not given proper medical care.

20. On February 1, 2023, the decedent was festering alone in his cell, seated upright in a chair, in an isolated mental health ward of the Washington County Prison, when he slumped over.

21. The decedent was being surveilled by Defendant Hallet and/or Doe at the time.

22. Defendant Hallet and/or Doe went to physically examine the decedent.

23. After the examination, Defendant Hallet called for emergency backup.

24. The decedent was rushed to a local nearby hospital, where he remained on life support until he succumbed to his death on February 9, 2023.

25. Based upon information and belief and the Death investigation report by the Washington County Coroner's Office, Defendant Fewell was personally aware of the decedent, where he was housed, his mental health capacity, and the medical treatment or lack thereof the decedent was receiving at the Washington County Jail.

26. Based upon information and belief, Defendants Doe were responsible for monitoring the decedent to ensure he was given properly medical treatment and he was generally kept safe.

27. The nature of death included, but was not limited to Bilateral Pneumonia Lobar, and Chronic Duodenal Ulcer, Perforated. Based upon information and belief, because Plaintiff was left to fester in his cell, he was not given treatment for pneumonia and a perforated ulcer.

*Facts Specific to Supervisory, Vicarious, and Training Liability regarding the Defendant the Washington County Prison*

28. Defendant Washington County has a non-delegable duty to provide medical care to inmates in their custody, regardless of contracts with third-party subcontractors.

29. Defendants Washington County and PrimeCare knew or should have known of the institutional deficiencies in the care and services they provided to the inmates in the Washington County Prison, for which they were charged with their care.

30. Specifically, there was an instituted policy at the time of Mr. Murin's detention at the Washington County Prison of cost-cutting measures and inadequate care for inmates with extreme mental health needs.

31. More specifically, Defendants Fewell, Woznichak, and Does were personally responsible for implementing policies and procedures at the Schuylkill County Prison at the time Mr. Murin was an inmate.

32. Defendants Fewell, Woznichak, and Does oversaw all prison operations and were responsible for hiring and firing all employees of the Washington County Prison.

33. Defendants Fewell, Woznichak, and Does had the authority to enact and enforce corrections policy at the Washington County Prison.

34. Defendants Fewell, Woznichak, and Does implemented the policy of not having a full-time psychologist or psychiatrist on staff at the Washington County Prison.

35. Defendants Fewell and Does decide to subcontract medical care to inmates at the Washington County Prison to PrimeCare, and determined the budget for PrimeCare.

36. Defendants Fewell, Woznichak, and Does had the authority to enact and enforce medical policy at the Washington County Prison.

37. Further, based on information and belief, PrimeCare was paid a "flat fee" for care to inmates at the Washgont County Prison, thereby incentivizing PrimeCare to provide the least amount of care to inmates at the SCP.

38. Washington County Prison has a history of inmates dying at the prison and or lack of and disregard for medical care of inmates:

   a. In June of 2006, inmate Ronald Gallo complained of severe pain in his leg and displaced all of the symptoms known to medical providers as MRSA. Gallo was ignored and called a faker. Eventually, he was removed from the prison and transported to a local hospital, where he underwent three surgeries to repair his leg but was permanently disabled as a result of the lack of care for the MRSA infection.

   b. In February 2015, inmate Richard Kempf was found in his cell hanging from a bedsheet and later pronounced dead.

   c. In September 2015, inmate Gregory Michaux was found in his cell hanging from a bedsheet and later pronounced dead.

    d. In October of 2015, inmate Darius Rawls was found in his cell hanging from a bedsheet and later pronounced dead.

    e. In March 2016, inmate Tim Warco, was found dead in his cell due to unknown circumstances.

    f. In April of 2024, Joyce Cole was given the wrong type of insulin at the Washington County Prison, which caused her to have a severe bodily infection and other medical ailments.

39. Continually, in the deaths cited in the preceding paragraph, Washington County Prison has historically failed to properly train, hire, and supervise correctional officers, correctional supervisors, mental health professionals, mental health doctors, and mental health nurses.

40. Continually, in the deaths cited, the employees of Defendant Washington County Prison have not followed the rules promulgated by Defendant Washington County Prison regarding the monitoring of inmates suffering from behavioral health disorders who are suicidal.

41. Continually, in the deaths cited, Defendant Washington County Prison does not have proper policies and practices in place to ensure staff members communicate suicidal risk to each other among different units.

42. Continually, in the deaths cited, Defendant PrimeCare has not provided proper medical care to inmates due to cost-saving techniques that routinely deprive inmates of needed medical care.

## COUNT I:
## FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
## FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983
## PLAINTIFF V. ALL DEFENDANTS

43. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at length.

44. Mr. Murin had a known history of severe mental illness and a history of attempted suicide.

45. Mr. Murin had clear and documents physical illnesses including being a recent victim of excessive force by police whne he was tased and beaten by local police; he also had pneumonia, and a bleeding ulcer, which were both know to medical staff at the Washington County Prison.

46. Mr. Murin cooperated with corrections officers and health care providers regarding treatment of his mental health and physical treatment.

47. Mr. Murin entered the Correctional Facility in an obviously fragile condition considering the severity due to his extreme mental health condition and having been recently tased.

48. Despite showing signs of continued physical and behavioral health concerns, Mr. Murin was given less than the minimum care required by Defendants Washington County and PrimeCare.

49. Defendants acted deliberately, recklessly, and with a conscious disregard of the obvious risk that Mr. Murin would die.

50. Defendants' actions caused Mr. Murin to needlessly suffer, served no penological purpose, and caused him to eventually die.

51. As a direct and proximate cause of Defendants' actions, Mr. Murin suffered emotional injury, immense physical pain, humiliation, fear, physical injuries, and death.

WHEREFORE, Plaintiff claims of Defendant Schuylkill County a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

### COUNT II:
### SUPERVISOR LIABILITY –
### FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF V. DEFENDANT SCHUYLKILL COUNTY, DEFENDANT PRIMECARE, DEFENDANTS FEWELL, WOZNICHAK, AND DOES

52. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

53. Defendants were deliberately indifferent to the needs of mentally ill persons who were under their supervision at the Correctional Facility.

54. Upon information and belief, Defendants were aware that certain policies and customs posed a grave danger to behavioral health patients detained in the Correctional Facility, including Mr. Murin.

55. Defendants maintained a policy of inadequately staffing the facility with proper staff to address inmates with severe mental and physical illnesses.

56. In spite of such knowledge, Defendants did nothing to implement corrective policy or correct custom which Defendants knew posed a serious danger to inmates and pre-trial detainees, including Mr. Murin.

57. Defendants were deliberately indifferent to the well-being of the behavioral health patients detained in the Correctional Facility, including Mr. Murin.

58. Defendants knew of their supervisory failures and knew that mentally ill detainees were not receiving adequate treatment, but deliberately failed to correct the problem.

59. Defendants were aware of a substantial risk that mentally ill detainees would harm themselves or commit suicide because of inadequate care.

60. Defendants were deliberately indifferent to the needs of mentally ill persons, specifically those with a history of substance abuse, who were detained at Correctional Facility under their supervision.

61. Defendants were deliberately indifferent to the consequences of their established policies and customs.

62. Defendants establishment and maintenance of the above-mentioned policies and customs directly caused Mr. Murin to be deprived of his Constitutional rights.

63. As a direct and proximate result of Defendants deliberate indifference, Mr. Murin suffered immense physical pain, humiliation, fear, physical injuries and death. Moreover, Mr. Murin's family suffered mental anguish and a loss of companionship, comfort, financial support and guidance.

64. Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which she has no present knowledge.

WHEREFORE, Plaintiff, claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT III:
## MUNICIPAL LIABILITY
## FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFF V. DEFENDANT WASHINGTON COUNTY and DEFENDANT PRIMECARE,

65. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at length.

66. Defendants promulgated and maintained policies and customs, as pled at length above, which were the moving force that caused Mr. Murin's constitutional and statutory rights being violated.

67. Defendants failed to adhere to the protocol in detecting and safeguarding inmates suspected of contemplating suicide, with severe mental health issues and severe physical health issues.

68. Defendants maintained a policy of staffing the facility without proper medical professionals for inmates.

69. Defendants maintained a custom among corrections officers and behavioral and physical health care providers of not sharing information about inmate and detainee's behavioral health status, symptoms, history, and warning signs.

70. Defendants maintained a custom among behavioral health care providers to only look back at the most recent health care record, and not properly consider other physical issues for inmates under their supervision.

71. All of the pled policies and customs were implemented before, during, and after Mr. Murin's detention at the Correctional Facility.

72. Defendants knew of the dangers posed by these policies and customs.

73. Specifically, Defendants were fully aware prior to the decedent's incarceration of the extreme danger posed by housing seriously mentally ill inmates and detainees without providing proper care for physical ailments due to other issues, such as recently being tased.

74. Defendants knew of prior deaths at the prison as cited *supra*, yet no corrective actions

were taken.

75. Had Defendants, properly promulgated appropriate protocol, appropriate custom or adequately trained and/or supervised the individual defendants, Mr. Murin would have received appropriate care and supervision.

76. Defendants were deliberately indifferent to the constitutional rights of Mr. Murin.

77. Defendants policies and customs were a direct and proximate cause of Plaintiff's injuries and damages.

78. As a direct and proximate result of Defendants policies and customs, Mr. Murin suffered immense physical pain, humiliation, fear, physical injuries and death. Moreover, Mr. Murin's family suffered mental anguish and a loss of companionship, comfort, financial support and guidance.

79. Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which she has no present knowledge.

WHEREFORE, Plaintiffs claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT IV:
## WRONGFUL DEATH (PENNSYLVANIA LAW)
## PLAINTIFF V. ALL DEFENDANTS

80. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

81. Plaintiff, Robert Murin, individually and as Administrator of the Estate of Andrew Murin, deceased brings the action on behalf of the beneficiaries under and by virtue of the

Wrongful Death Act, 42 Pa.C.S.A. § 8301, and the Applica table Rules of Civil Procedure.

82. Andrew Murin left surviving him, his brother, who is the beneficiary under the Wrongful Death Act.

83. As a result of the conduct of Defendants, as set forth herein, Andrew Murin, deceased, was caused grave injuries and death, resulting in the entitlement to damages by the beneficiaries under the wrongful Death Act.

84. Plaintiff Robert Murin, individually and as Administrator of the Estate of Andrew Murin, deceased, claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing Andrew Murin's death.

85. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for services provided of which could have been expected to have been performed in the future.

86. On behalf of the Wrongful Death Act Beneficiaries, the Administrator claims damages for all pecuniary loss suffered by the beneficiaries.

87. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all loss of comfort, society, guidance, and tutelage that the beneficiaries may have received from the decedent by the beneficiaries as a result of decedent's untimely death.

88. On behalf of the Wrongful Death beneficiaries, the Adminsitrator claims damages for the full measure of damages, including punitive damages, allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000)

and in excess of local arbitration limits, exclusive of interests and costs.

## COUNT V: <br> SURVIVAL ACTION (PENNSYLVANIA LAW) – <br> PLAINTIFF V. ALL DEFENDANTS

89. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

90. Plaintiff Robert Murin, individually and as Adminsitrator of the Estate of Andrew Murin, deceased, brings this Survival Action on behalf of the Estate of Robert Murin, deceased, brings this Survival Action on behalf of the Estate of Andrew Murin under and by virtue of 42 Pa.C.S. §8302, and the applicable Rules of Civil Procedure and the decisional law interpreting the Act.

91. As a result of the negligence of all Defendants set forth herein, Andrew Murin, was caused grave injuries and death, resulting in the entitlement to damages by his Estate under the Survival Act.

92. As a result of the death of Andrew Murin, his Estate has been deprived of the economic value of her life expectancy, and Plaintiff claims under the Survival Act, damages for all pecuniary losses suffered by the Estate as a result of her decedent's death, including all loss of income, earnings, retirement income, benefits and Social Security income.

93. The Adminsitrator further claims, under the Survival Act, the total amount that the decedent would have earned in the future, minus the costs of personal maintenance.

94. The Administrator further claims, under the Survival Act, damages for the conscious pain and suffering endured by decedent prior to death, including physical pain and suffering, and mental pain and suffering leading to decedent's death.

95. The Administrator further claims, under the Survival Act, all damages, including punitive damages, are recoverable pursuant to 42 Pa.C.S. § 8302 and the decisional law interpreting said Act.

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000), and in excess of local arbitration limits, exclusive of interests and costs.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

Januar 30, 25                        /s/Brian Zeiger
DATE                                 BRIAN ZEIGER
                                     IDENTIFICATION NO.: 87063
                                     LEVIN & ZEIGER, LLP
                                     TWO PENN CENTER
                                     1500 JFK BLVD STE 620
                                     PHILADELPHIA, PA 19102
                                     215.825.5183
                                     zeiger@levinzeiger.com